1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

William M. Hogg (SBN 338196)
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Tel: (713) 352-1100
Fax: (713) 352-3300
whogg@mybackwages.com

*Counsel for Bagley & the Hourly Employees*

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

**TIMMIE BAGLEY**, Individually and for Others Similarly Situated,

     Plaintiff,

v.

**PILOT SERVICES, LLC d/b/a PILOT GLOBAL TECHNOLOGIES f/k/a VON TECHNOLOGIES, LLC**

     Defendant.

Case No. _____

**ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT FOR:**

(1)  Failure to Pay Overtime Under the Fair Labor Standards Act (29 U.S.C. § 201 *et seq.*)

(2)  Failure to Pay Overtime (Labor Code § 510);

(3)  Failure to Provide Timely and Accurate Itemized Wage Statements (Labor Code § 226); and

(4)  Unlawful Business Practices (Bus. & Prof. Code §§ 17200 *et seq.*).

**DEMAND FOR JURY TRIAL**

**SUMMARY**

1. Timmie Bagley (Bagley) brings this class and collective action to recover unpaid wages and other damages from Pilot Services, LLC f/k/a Von Technologies, LLC (Pilot).

2. Pilot employs Bagley as one of its Hourly Employees (defined below).

3. Bagley and the other Hourly Employees regularly work more than 8 hours a day and 40 hours a week.

4. But Pilot does not pay Bagley and the other Hourly Employees overtime at the required premium rate.

5. Likewise, Bagley and other Hourly Employees occasionally work more than 12 hours a day and more than 8 hours on their seventh consecutive workday.

6. But Pilot does not pay Bagley and other Hourly Employees double time at the required premium rate.

7. Instead of paying overtime or double time at the required premium rates when these employees work more than 8 hours a day or 40 hours a week, Pilot pays Bagley and the other Hourly Employees half their base rates of pay for hours worked in excess of 40 a week. (Pilot's "half time pay scheme").

8. Pilot's half time pay scheme violates the California Labor Code and applicable IWC Wage Order(s) by depriving Bagley and other Hourly Employees of overtime wages at rates not less than 1.5 times their regular rates of pay for the hours they work in excess of 8 a workday and 40 a workweek.

9. Likewise, Pilot's half time pay scheme violates the California Labor Code and applicable IWC Wage Order(s) by depriving Bagley and other Hourly Employees of double time wages at rates not less than 2 times their regular rates of pay for they hours they work in excess of 12 in a workday and 8 on their seventh consecutive workday.

10. And Pilot's half time pay scheme violates the Fair Labor Standards Act (FLSA) by depriving Bagley and other Hourly Employees of overtime wages at rates not

1  less than 1.5 times their regular rates of pay for the hours they work in excess of 40 a
2  workweek.

3      11.     Further, Pilot's half time pay scheme violates the accurate wage statement
4  provisions of the California Labor Code and applicable Wage Order(s) by depriving Bagley
5  and other Hourly Employees of wage statements that accurately reflect all overtime and
6  double time actually earned.

7      12.     Finally, Pilot's unlawful employment practices violate California's Unfair
8  Competition Law (UCL) by practicing, employing, and utilizing the employment practices
9  outlined above and knowingly denying Bagley and other Hourly Employees: (1) overtime
10 wages; (2) double time wages; and (3) accurate, itemized wage statements.

11                              **JURISDICTION & VENUE**

12     13.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §
13 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

14     14.     This Court has supplemental jurisdiction over the state-law subclass claims
15 because they arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

16     15.     This Court has personal jurisdiction over Pilot because Pilot transacts
17 substantial business in California and employs numerous employees in California,
18 including Bagley.

19     16.     Venue is proper in this District and Division because a substantial portion of
20 the events or omissions giving rise to this action occurred in this District and Division.
21 28 U.S.C. § 1391(b)(2).

22     17.     Specifically, Bagley worked for Pilot in Los Angeles County, California.

23                                    **PARTIES**

24     18.     Pilot has employed Bagley as a field technician since approximately October
25 2019 through the present.

26     19.     Pilot classified Bagley as non-exempt and paid him by the hour.

27     20.     But Pilot did not pay him at the required premium rate for the hours he

28

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT AND JURY DEMAND
*Bagley v. Pilot Services, LLC, et al.*

worked in excess of 8 a day and 40 a week.

21. Instead, Pilot paid him at his base rate for hours worked up to 40 a workweek and at one half of his base rate for hours worked in excess of 40 a workweek.

22. And Pilot subjected the other Hourly Employees to this same half time pay scheme.

23. Bagley seeks to represent a collective of similarly situated Pilot employees under the FLSA and a class under California law.

24. The putative FLSA collective of similarly situated employees is defined as:

**All non-exempt hourly Pilot field technicians and similar employees paid according to Pilot's half time pay scheme at any time during the past 3 years through final resolution of this Action (the "FLSA Collective Members").**

25. The putative class of similarly situated employees is defined as:

**All non-exempt hourly Pilot field technicians and similar employees paid according to Pilot's half time pay scheme, who worked in California at any time during the past 4 years through final resolution of this Action (the "California Class Members").**

26. The FLSA Collective Members and the California Class Members are referred to as the "Hourly Employees."

27. Pilot is an Illinois limited liability company headquartered in Naperville, Illinois.

28. Pilot may be served with process by serving its registered agent: **SA Law Agents, Inc., 150 N. Michigan Ave., Suite 3300, Chicago, Illinois 60601.**

## FLSA COVERAGE

29. At all relevant times, Pilot is and has been an employer within the meaning of the FLSA. 29 U.S.C. § 203(d).

30. At all relevant times, Pilot is and has been an enterprise within the meaning of the FLSA. 29 U.S.C. § 203(r).

31. At all relevant times, Pilot is and has been an enterprise engaged in commerce

or in the production of goods for commerce within the meaning of the FLSA. 29 U.S.C. § 203(s)(1).

32.    At all relevant times, Pilot has and has had an annual gross business volume of not less than $1,000,000 each year.

33.    At all relevant times, Pilot has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or were produced for commerce, such as wireless internet data, computers, and cell phones.

34.    At all relevant times, Bagley and the FLSA Collective Members were engaged in commerce or in the production of goods for commerce.

35.    Pilot uniformly fails to pay Bagley and the FLSA Collective Members all overtime hours worked at the required overtime rates of pay.

36.    Pilot's half time pay scheme, which deprives Bagley and the other FLSA Collective Members of overtime compensation at the required rate when they work more than 40 hours in a workweek, willfully violates of the FLSA. 29 U.S.C. § 207(a) & (e).

37.    As a result, Pilot fails and has failed to pay Bagley and FLSA Collective Members all overtime wages owed.

38.    Pilot's half time pay scheme violates the FLSA by depriving Bagley and FLSA Collective Members of all overtime wages owed for all hours worked after 40 in a workweek. 29 U.S.C. § 207(a) & (e).

**FACTS**

39.    Pilot bills itself as a "technology company that empowers organizations to unleash their full potential through the design, installation and ongoing management of network solutions within the most complex business environments."[1]

40.    Pilot formed as the result of an October 1, 2023 merger between Von

---

[1] https://pilotgt.com/ (last visited October 7, 2024).

Technologies, Crosswind Cloud Solutions, and Pilot Services.[2]

41.  To meet its business objectives, Pilot employs workers such as Bagley and the other Hourly Employees.

42.  For example, Bagley worked for Pilot as a field technician from approximately October 2019 through the present across the U.S. in California, New York, Wyoming, Nevada, Maryland, North Carolina, Illinois, Oklahoma, Texas, Louisiana, Virginia, Michigan, Washington, and New Jersey

43.  Bagley worked for Pilot in California on five to six occasions for two to three weeks at a time during 2022 and 2023, including in and around Los Angeles County, California.

44.  As a field technician, Bagley's primary job duties included meeting with Pilot's customers to ensure the work order for the wireless network system installation is accurate, review parts and equipment and request any necessary items not already on hand, unbox and unspool fiber cable, plan and "pull" the fiber cable according to the work order, make the necessary connections between main distribution frames, intermediate distribution frames, and wireless access points, and once the new wireless network system is installed, perform the "cutover" disconnecting and uninstalling the old system.

45.  Bagley is Pilot's non-exempt, hourly employee.

46.  Pilot pays Bagley approximately $37 an hour.

47.  Throughout his employment, Pilot required Bagley to report his "on the clock" hours to Pilot for approval through its uniform timekeeping system.

48.  Throughout his employment, Bagley regularly worked more than 8 hours a workday and 40 hours a workweek.

49.  Indeed, throughout his employment, Bagley has typically worked 8-12 hours

---

[2] https://www.linkedin.com/posts/kimberly-warren-7a894b3_we-are-thrilled-to-announce-that-on-october-activity-7123426687085649921-Fctj (last visited October 8, 2024).

1    a day for 5-7 days a week (or 40 to 84 hours a week) "on the clock."

2        50.    And while exact job duties and precise locations worked may differ, Bagley

3    and the other Hourly Employees are all subject to Pilot's same or similar illegal policy –

4    its half time pay scheme – for similar work.

5        51.    Despite knowing Bagley and the other Hourly Employees regularly work

6    overtime, and occasionally double time, Pilot does not pay them for all overtime and

7    double time hours worked at the required rates.

8        52.    Instead, Pilot pays Bagley and the other Hourly Employees under its half time

9    pay scheme.

10       53.    Specifically, Pilot pays Bagley and the other Hourly Employees one half of

11   their base rates of pay when they work in excess of 40 hours a workweek.

12       54.    For example, during the bi-weekly pay period ending January 28, 2023, Bagley

13   worked 97.98 hours and Pilot paid Bagley at one half of his base rate – $18.50 – for 17.98

14   hours:

15
16

| CURRENT EARNINGS DETAIL | | | |
|---|---|---|---|
| Date | Description | Rate | Hours | Amount |
| 01-28-2023 | RATE 2 | 18.5000 | 17.98 | 332.63 |
| 01-28-2023 | REGULAR | 37.0000 | 80.00 | 2960.00 |

17       55.    Like Bagley, Pilot pays the other Hourly Employees by the hour.

18       56.    Throughout his employment, Pilot required Bagley to report his "on the

19   clock" hours to Pilot for approval through its uniform timekeeping system.

20       57.    And like Bagley they regularly worked more than 8 hours a workday and 40

21   hours a workweek.

22       58.    Indeed, throughout his employment, Bagley has typically worked 8-12 hours

23   a day for 5-7 days a week (or 40 to 84 hours a week) "on the clock."

24       59.    Further, as a result of its uniform half time pay scheme, Pilot also fails to

25   provide Bagley and the other Hourly Employees with accurate, itemized wage statements.

26       60.    Instead, the wage statements Pilot provides fail to accurately reflect the actual

27   gross wages earned, overtime wages earned, double time wages earned, and actual net

28

wages earned, in willful violation of California law.

61.    Pilot's violations of federal and California law were willful, carried out in bad faith, and caused significant damage to the Bagley and the other Hourly Employees.

### CLASS AND COLLECTIVE ACTION ALLEGATIONS

62.    Bagley brings his claims as a class and collective action on behalf of himself and the other Hourly Employees pursuant to Fed. R. Civ. P. 23 and 29 U.S.C. § 216(b).

63.    Like Bagley, the other Hourly Employees are victimized by Pilot's half time pay scheme.

64.    Other Hourly Employees worked with Bagley and indicated they were paid in the same manner, performed similar work, and were subject to Pilot's half time pay scheme.

65.    Based on her experience with Pilot, Bagley is aware Pilot's half time pay scheme was imposed on the other Hourly Employees.

66.    The putative California class of Hourly Employees is so numerous (in excess of 50 members) that the joinder of all class members in one lawsuit is impracticable.

67.    The Hourly Employees are similarly situated in the most relevant respects.

68.    Even if their precise job titles, exact duties, and locations might vary, these differences do not matter for the purposes of determining their entitlement to overtime and double time pay at the required premium rates and accurate wage statements.

69.    The relevant inquiry is whether the Hourly Employees were paid according to Pilot's half time pay scheme.

70.    Therefore, the specific job titles or precise job locations of the various Hourly Employees do not prevent class or collective treatment.

71.    Rather, the putative class of Hourly Employees is held together by Pilot's half time pay scheme, which systematically deprived Bagley and the other Hourly Employees of overtime and double time pay at the required premium rates and accurate wage statements.

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT AND JURY DEMAND
*Bagley v. Pilot Services, LLC, et al.*

72.    Pilot's records show the number of hours the Hourly Employees worked "on the clock" each workday and workweek.

73.    Pilot's records also show the Hourly Employees were paid only half of their base rate for hours worked in excess of 8 in a day and 40 in a workweek.

74.    The back wages owed to Bagley and the other Hourly Employees can therefore be calculated using the same formula applied to the same records.

75.    Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Pilot's records, and there is no detraction from the common nucleus of liability facts.

76.    Therefore, the issue of damages does not preclude class or collective treatment.

77.    And Bagley's experiences in being paid half time for overtime are typical of the experiences of the other Hourly Employees who are paid under the same scheme.

78.    Bagley has no interest contrary to, or in conflict with, the interests of other Hourly Employees that would prevent class or collective treatment.

79.    Like each Hourly Employee, Bagley has an interest in obtaining the unpaid wages owed to them under federal and California law.

80.    Bagley and his counsel will fairly and adequately represent the Hourly Employees and their interests.

81.    Bagley has retained counsel with significant experience in handling complex class and collective action litigation.

82.    A class action is superior to other available means for fair and efficient adjudication of the state law claims at issue in this lawsuit.

83.    Absent this class and collective action, many Hourly Employees will not obtain redress for their injuries, and Pilot will reap the unjust benefits of violating the FLSA and California wage and hour law.

84.    Further, even if some of the Hourly Employees could afford individual

litigation it would be unduly burdensome to the judicial system.

85.    Indeed, the multiplicity of actions would create a hardship to the Hourly Employees, the Court, and Pilot.

86.    Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

87.    The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual members.

88.    The common questions of law and fact include:

a.    Whether Pilot paid the Hourly Employees half of their base rates of pay for hours worked in excess of 8 a day and 40 a workweek;

b.    Whether Pilot's half time pay scheme deprived the Hourly Employees of overtime and double time at the required premium rates in violation of federal and California law;

c.    Whether Pilot failed to provide the Hourly Employees with accurate, itemized wage statements in violation of California law;

d.    Whether Pilot's decision not to pay the Hourly Employees overtime and double time at the required premium rates was made in good faith;

e.    Whether Pilot's decision not to provide the Hourly Employees with accurate, itemized wage statements was made in good faith; and

f.    Whether Pilot's violations of were willful.

89.    Bagley knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class and collective action.

90.    As part of its regular business practices, Pilot intentionally, willfully, and

1  repeatedly violated federal and California law with respect to Bagley and the other Hourly
2  Employees.

3      91.    Pilot's half time pay scheme uniformly deprived Bagley and the other Hourly
4  Employees of the overtime and double time pay at the required premium rates and
5  accurate wage statements.

6      92.    Pilot's half time pay scheme deprived Bagley and the other Hourly Employees
7  of the overtime pay, double time pay, and accurate wage statements they are owed under
8  federal and/or California law.

9      93.    There are many similarly situated Hourly Employees who have been denied
10  overtime pay in violation of the FLSA who would benefit from the issuance of a court-
11  supervised notice of this lawsuit and the opportunity to join it.

12      94.    The Hourly Employees are known to Pilot, are readily identifiable, and can
13  be located through Pilot's business and personnel records.

14  <center>**PILOT'S VIOLATIONS WERE WILLFUL AND/OR<br>DONE IN RECKLESS DISREGARD OF THE FLSA AND CALIFORNIA LAW**</center>

15      95.    Pilot knew it was subject to the FLSA's, California Labor Code's, and
16  applicable IWC Wage Order's overtime provisions.

17      96.    Pilot knew the FLSA, California Labor Code, and applicable IWC Wage
18  Order(s) required it to pay non-exempt employees, including the Hourly Employees,
19  overtime wages at rates not less than 1.5 times their regular rates of pay for all hours
20  worked in excess of 40 a workweek.

21      97.    Pilot knew the California Labor Code and applicable IWC Wage Order(s)
22  required it to pay non-exempt employees, including the Hourly Employees, overtime
23  wages at rates not less than 1.5 times their regular rates of pay for all hours worked in
24  excess of 8 a workday and 40 a workweek.

25      98.    Pilot knew each Hourly Employee worked more than 8 hours in at least one
26  workday and/or more than 40 hours in at least one workweek during the relevant period
27  because it required them to report their hours worked.

28

99.    Pilot also knew it was subject to the California Labor Code's and applicable IWC Wage Order's double time provisions.

100.    Pilot knew the California Labor Code and applicable IWC Wage Order(s) required it to pay non-exempt employees, including the Hourly Employees, double time wages at rates not less than 2 times their regular rates of pay for all hours worked after 12 in a workday and 8 on their seventh consecutive workday.

101.    Pilot knew each Hourly Employee worked more than 12 hours in a least one workday and/or more than 8 hours in at least one seventh consecutive workday during the relevant period because it required them to report their hours worked.

102.    Pilot knew the Hourly Employees were its hourly employees.

103.    Pilot knew the Hourly Employees were paid at half their base rate of pay for hours worked in excess of 8 a workday and 40 a workweek.

104.    Pilot knew it was required to pay the Hourly Employees 1.5 times their regular rates of pay under federal and California law for all hours worked in excess of 40 a workweek.

105.    Pilot knew it was required to pay the Hourly Employees 1.5 times their regular rates of pay for all hours worked in excess of 8 a workday and  twice their regular rates of pay for all hours worked in excess of 12 in a workday and 8 on their seventh consecutive day of work, under California law.

106.    Nonetheless, Pilot failed to pay the Hourly Employees at the required premium rates for overtime and double time purposes in violation of federal and California law.

107.    Pilot's decision to pay the Hourly Employees only half their base rates of pay for overtime and double time hours was neither reasonable nor made in good faith.

108.    Pilot knew the California Labor Code and applicable IWC Wage Order(s) required it to provide employees, including the Hourly Employees, with accurate, itemized wage statements.

109. Nonetheless, Pilot knew the wage statements it provided to the Hourly Employees did not accurately reflect their overtime and double time wages earned, gross wages earned, and net wages earned.

110. Pilot's decision not to provide its Hourly Employees with accurate wage statements was neither reasonable nor made in good faith.

111. Pilot knew, should have known, or recklessly disregarded whether its conduct described in this Complaint violated federal and California law.

112. Pilot knowingly, willfully, and/or in recklessly disregard carried out its half time pay scheme that systematically deprived the Hourly Employees of overtime and double time at the required premium rates and accurate wage statements in violation of federal and California law.

113. Indeed, Pilot has been sued previously by employees for failing to pay proper wages in violation of federal law. *See, e.g.*, *Vukovic v. Von Technologies, LLC,* Case No. 17-cv-02305 (N.D. Ill.).

114. In sum, Pilot's violations were willful, carried out in bad faith, and caused significant damage to Bagley and the other Hourly Employees.

## COUNT I

### FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA
### (FLSA Collective Action)

115. Bagley brings his FLSA claims as a collective action on behalf of himself and the other FLSA Collective Members.

116. Pilot violated, and is violating, the FLSA by employing non-exempt employees (Bagley and the other FLSA Collective Members) in a covered enterprise for workweeks longer than 40 hours without paying them overtime wages at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for hours worked in excess of 40 a workweek.

117. Pilot's unlawful conduct harmed Bagley and the other FLSA Collective

Members by depriving them of the overtime wages they are owed.

118.    Accordingly, Bagley and the other FLSA Collective Members are entitled to recover their unpaid overtime wages under the FLSA in an amount equal to 1.5 times their regular rates of pay less the amounts already paid to them for such hours of work, plus an equal amount as liquidated damages, as well as attorney's fees and costs.

<div align="center">

**COUNT II**

**FAILURE TO PAY OVERTIME & DOUBLE TIME
PURSUANT TO CAL. LAB. CODE § 510
(Rule 23 Class Action)**

</div>

119.    Bagley brings his overtime and double time claims under the California Labor Code and IWC Wage Order(s) as a class action on behalf of himself and the other California Class Members pursuant to FED. R. CIV. P. 23.

120.    At all relevant times, Pilot was subject to the Labor Code and applicable Wage Order(s) because Pilot was (and is) an "employer" within the meaning of the Labor Code and applicable Wage Order(s).

121.    At all relevant times, Pilot employed Bagley and the other California Class Members as its covered "employees" within the meaning prescribed in the Labor Code.

122.    Bagley and the other California Class Members are entitled to overtime and double-time pay under the Labor Code and applicable Wage Orders.

123.    Labor Code § 510(a) provides:

> Eight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee. Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee.

124.    IWC Wage Order 17-2001(4) states that employees:

> . . . shall not be employed more than eight (8) hours in any workday or more than 40 hours in any workweek unless the employee receives one and one-half (1½) times such employee's regular rate of pay for all hours worked over 40 hours in the workweek. Eight (8) hours of labor constitutes

<div align="center">

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT AND JURY DEMAND

*Bagley v. Pilot Services, LLC, et al.*

</div>

a day's work. Employment beyond eight (8) hours in any workday or more than six (6) days in any workweek is permissible provided the employee is compensated for such overtime at not less than … [o]ne and one-half (1½) times the employee's regular rate of pay for all hours worked in excess of eight (8) hours up to and including 12 hours in any workday, and for the first eight (8) hours worked on the seventh (7th) consecutive day of work in a workweek….

125. Labor Code § 1194(a) provides:

Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorneys' fees, and costs of suit.

126. Labor Code § 1198 makes it unlawful for employers, like Pilot, to employ employees, including Bagley and the other California Class Members, under conditions that violate the IWC Wage Order(s).

127. Despite regularly working over 8 hours a day and/or 40 hours in a workweek as part of their normal and regular schedules, Pilot did not pay Bagley and the other California Class Members overtime wages at the required rates for all overtime hours worked.

128. Despite occasionally working over 12 hours a day with Pilot's knowledge of such work, Pilot did not pay Bagley, and the other California Class Members double-time wages for all double-time hours worked at the required rates.

129. Instead, Pilot paid Bagley and the California Class Members at a rate of 0.5 times their regular rates of pay for hours worked beyond 8 in a day or 40 in a workweek.

130. Pilot's unlawful conduct harmed Bagley and the other California Class Members by depriving them of the overtime and double-time wages at the required rates that they are owed under California law.

131. Accordingly, Pilot owes Bagley and the other California Class Members the unpaid balance of the full amount of overtime and double-time wages owed and interest at the highest applicable rates.

132.    Finally, Pilot is also liable to Bagley and the other California Class Members for their reasonable attorneys' fees and costs incurred in this action.

## COUNT III

### FAILURE TO PROVIDE ACCURATE WAGE STATEMENTS PURSUANT TO CAL. LAB. CODE § 226
### (Rule 23 Class Action)

133.    Bagley brings his wage statement claim under the California Labor Code and IWC Wage Order(s) as a class action on behalf of himself and the other California Class Members pursuant to FED. R. CIV. P. 23.

134.    At all relevant times, Pilot was subject to the Labor Code and applicable Wage Order(s) because Pilot was (and is) an "employer" within the meaning of the Labor Code and applicable Wage Order(s).

135.    At all relevant times, Pilot employed Bagley and the other California Class Members as its covered "employees" within the meaning prescribed in the Labor Code.

136.    Labor Code § 226(a) provides:

> An employer, semimonthly or at the time of each payment of wages, shall furnish to his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately if wages are paid by personal check or cash, an accurate itemized statement in writing showing: (1) gross wages earned, (2) total hours worked by the employee, except as provided in subdivision (j), (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number, (8) the name and address of the legal entity that is the employer and, if the employer is a farm labor contractor, as defined in subdivision (b) of Section 1682, the name and address of the legal entity that secured the services of the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee …. The deductions made from payments of wages shall be recorded in ink or other indelible form, properly dated, showing the month, day, and year, and a copy of the statement or a record of the deductions shall be kept on file by the employer for at least three years at the place of employment or at a central location within the State of California.

137. The applicable Wage Order(s) establish similar wage statement requirements.

138. Labor Code § 226(e) provides:

> An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorneys' fees.

139. As a result of its aforementioned illegal practices, Pilot does not provide timely, accurate itemized wage statements to Bagley and the other California Class Members, in violation of Labor Code § 226(a) and the applicable Wage Order(s).

140. Specifically, the wage statements Pilot provides Bagley, and the other California Class Members do not accurately reflect their actual hours worked, their actual gross wages earned, their actual overtime wages earned, their actual double time wages earned, their premium pay earned, or their actual net wages earned.

141. Pilot's unlawful conduct harmed Bagley and the other California Class Members by depriving them of the accurate wage statements they are entitled to under California law.

142. Accordingly, Pilot is liable to Bagley and the other California Class Members for the amounts described above, plus interest.

143. Finally, Pilot is also liable to Bagley and the other California Class Members for their reasonable attorneys' fees and costs incurred in this action pursuant to Labor Code § 226(e).

## COUNT IV

### VIOLATION OF CALIFORNIA'S UCL
### PURSUANT TO CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.*
### (Rule 23 Class Action)

144. Bagley brings his UCL claim as a class action on behalf of himself and the other California Class Members pursuant to FED. R. CIV. P. 23.

145. California Business and Professions Code § 17200, *et seq.*, prohibits unfair

competition in the form of any unlawful, unfair, or fraudulent business acts or practices.

146.    Business and Professions Code § 17204 allows a person injured by the unfair business acts or practices to prosecute a civil action for violation of the UCL.

147.    Labor Code § 90.5(a) states it is the public policy of California to vigorously enforce minimum labor standards in order to ensure employees are not required to work under substandard and unlawful conditions, and to protect employers who comply with the law from those who attempt to gain competitive advantage at the expense of their workers by failing to comply with minimum labor standards.

148.    Beginning at an exact date unknown to Bagley, but at least during the 4 years prior to the filing of this Complaint, Pilot committed acts of unfair competition as defined by the UCL, engaging in the unlawful, unfair, and fraudulent business acts and practices described in this Complaint, including, but not limited to:

        a.    Violations of Labor Code § 204 pertaining to failure to pay all wages owed;

        b.    Violations of Labor Code § 510 and IWC Wage Order 17-2001 pertaining to overtime and double time;

        c.    Violations of Labor Code § 1198 and IWC Wage Order 17-2001 pertaining to maximum hours of work; and

        d.    Violations of Labor Code § 226 regarding accurate, timely itemized wage statements.

149.    Pilot's violations of these California laws and regulations, as well as the fundamental California public policies protecting wages, serve as unlawful predicate acts and practices for purposes of Business and Professions Code §§ 17200, *et seq.*

150.    Pilot's acts and practices described above constitute unfair, unlawful, and fraudulent business practices and unfair competition within the meaning of Business and Professions Code §§ 17200, *et seq.*

151.    Among other things, Pilot's acts and practices have taken from Bagley and

the other California Class Members' wages rightfully earned from them, while enabling Pilot to gain an unfair competitive advantage over law-abiding employers and competitors.

152.    Business and Professions Code § 17203 provides that a court may make such orders or judgments as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition.

153.    Injunctive relief is necessary and appropriate to prevent Pilot from repeating the unlawful, unfair, and fraudulent business acts and practices alleged in this Complaint.

154.    Pilot's unlawful conduct harmed Bagley and the other California Class Members by depriving them of money and property, in the form of unpaid wages which are due and payable to them.

155.    Business and Professions Code § 17203 provides that the Court may restore to any person in interest any money or property which may have been acquired by means of such unfair competition.

156.    Bagley and the other California Class Members are entitled to restitution pursuant to Business and Professions Code § 17203 for all wages and payments unlawfully withheld from them during the 4-year period prior to the filing of this Complaint.

157.    Bagley's success in this action will enforce important rights affecting the public interest and, in that regard, Bagley sues on behalf of himself as well as the other similarly situated California Class Members.

158.    Accordingly, Bagley and the other Hourly Employees seek and are entitled to unpaid wages, declaratory and injunctive relief, and all other equitable remedies owing to them.

159.    Bagley takes it upon himself to enforce these laws and lawful claims. There is a financial burden involved in pursuing this action, and the action is seeking to vindicate a public right and it would be against the interests of justice to penalize Bagley by forcing him to pay attorneys' fees from the recovery in this action.

160.    Thus, Attorneys' fees are appropriately awarded to Bagley pursuant to Code of Civil Procedure § 1021.5 and otherwise.

## RELIEF SOUGHT

WHEREFORE, Bagley, individually and on behalf of the other Hourly Employees, seeks the following relief:

a.    An Order finding Count I may be maintained as a collective action pursuant to 29 U.S.C. § 216(b), and that prompt notice of this action be issued to potential members of the Collective, apprising them of the pendency of this Action and permitting them to assert their FLSA claims;

b.    An Order equitably tolling the statute of limitations for the potential members of the FLSA Collective;

c.    An Order finding Counts II through IV may be maintained as a class action pursuant to FED. R. CIV. P. 23;

d.    An Order appointing Bagley and his counsel to represent the interests of the California Class Members;

e.    Damages and restitution according to proof at trial for all unpaid wages and other injuries, as provided by the FLSA, California Labor Code, and California Business & Professions Code;

f.    A Declaratory Judgment that Pilot violated the FLSA, California Labor Code, California law, and public policy as alleged herein;

g.    An Order finding Pilot liable to Bagley and the other FLSA Collective Members for all unpaid overtime wages owed under the FLSA, plus liquidated damages in an amount equal to their unpaid wages;

h.    An Order finding Pilot liable to Bagley and the other California Class Members for their unpaid wages, overtime wages, double-

time wages, liquidated damages, statutory damages, and any other penalties owed under the California Labor Code, the applicable IWC Wage Order(s), and the UCL;

i.   A Declaratory Judgment that Pilot violated the UCL as a result of the aforementioned violations of the California Labor Code and applicable IWC Wage Order(s);

j.   For preliminary, permanent, and mandatory injunctive relief prohibiting Pilot, its officers, agents, and all those acting in concert with them from committing those violations of law herein alleged in the future;

k.   For an equitable accounting to identify, locate, and restore all current and former employees the wages and compensatory damages they are due, with interest thereon at the highest rates allowable by law;

l.   Judgment awarding Bagley and the other Hourly Employees all unpaid wages, overtime wages, double time wages, liquidated damages, statutory damages, and any other penalties available under the FLSA, the California Labor Code, the applicable IWC Wage Order(s), and/or the UCL;

m.   An Order awarding attorney's fees, costs, and expenses as provided by the Labor Code, Code of Civil Procedure § 1021.5, the laws of the State of California, and/or other applicable law;

n.   Pre- and post-judgment interest at the highest applicable rates; and

o.   Such other and further relief as may be necessary and appropriate.

Date: October 10, 2024                    Respectfully submitted,

                                          /s/ William M. Hogg
                                          William M. Hogg
                                          **JOSEPHSON DUNLAP LLP**

                                          *Counsel for Bagley and the Hourly Employees*

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT AND JURY DEMAND
*Bagley v. Pilot Services, LLC, et al.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEMAND FOR JURY TRIAL**

Bagley hereby demands a jury trial on all claims and issues, as he and the other Hourly Employees are entitled to a jury.

Date: October 10, 2024                    Respectfully submitted,


                                          /s/ William M. Hogg
                                          William M. Hogg
                                          **JOSEPHSON DUNLAP LLP**

                                          *Counsel for Bagley and the Hourly Employees*